[Civ. No. 15173. First Dist., Div. Two. Feb. 27, 1953.]

FLORA ELLIS, Appellant, v. SALVATORE D'ANGELO, a Minor, etc., et al., Respondents.

Shirley, Saroyan, Calvert & Sullivan for Appellant.

Alexander, Bacon & Mundhenk and Herbert Chamberlin for Respondents.

DOOLING, J.—The plaintiff appeals from a judgment for the defendants entered after a demurrer was sustained to her first amended complaint without leave to amend. The complaint is in three counts. Count one alleges a battery by defendant Salvatore D'Angelo, a minor of the age of 4 years; the second count alleges injuries suffered by the plaintiff as the proximate result of the minor defendant negligently shoving and pushing the plaintiff violently to the floor; the third count seeks a recovery from the parents of the child for their negligence in failing to warn or inform plaintiff of the habit of the child of violently attacking other people. According to the allegation the plaintiff was by the minor defendant "pushed, impelled and knocked . . . violently to the floor" and suffered serious injuries including a fracturing of the bones of both her arms and wrists.

The two counts against the minor will be discussed together. Appellant points to the language of Civil Code, section 41: "A minor, or person of unsound mind, of whatever degree, is civilly liable for a wrong done by him, but is not liable in exemplary damages unless at the time of the act he was capable of knowing that it was wrongful."

This section is based upon sections 23 and 24 of the Field Commission's draft of a Civil Code which was submitted to the New York Legislature in 1865. This may be an anachronistic vestige of earlier common law principles, in other fields now outmoded, of liability without fault for trespass *vi et armis* (see Bohlen, *Liability In Tort Of Infants And Insane Persons,* 23 Mich.L.Rev. 9) but it remains true that our Legislature in Civil Code, section 41, above quoted by providing that a minor or person of unsound mind is civilly liable for wrongs done by him, and particularly by the qualification that he shall not be held for exemplary damages unless he was capable of knowing that the act was wrongful, has indicated clearly that it intended that a minor or person of unsound mind should be liable in compensatory damages for his tortious conduct even though he was not capable of knowing the wrongful character of his act at the time that he committed it. Startling as this idea may be at first blush, we are bound by this legislative declaration and taking it, and the state of the common law with relation to the liability of infants and persons of unsound mind of which it was intended as a codification, it is our duty to determine the legislative intent and to enforce it.

 It is generally stated in 27 American Jurisprudence, Infants, section 90, pages 812-813: "Liability of an infant in a civil action for his torts is imposed as a mode, not of punishment, but of compensation. If property has been destroyed or other loss occasioned by a wrongful act, it is just that the loss should fall upon the estate of the wrongdoer rather than on that of a guiltless person, and that without reference to the question of moral guilt. Consequently, for every tortious act of violence or other pure tort, the infant tort-feasor is liable in a civil action to the injured person in the same manner and to the same extent as an adult. . . . Infancy, being in law a shield and not a sword, cannot be pleaded to avoid liability for frauds, trespasses, or torts. . . .

 "A child of tender years may be held liable for acts

of violence, and liability has often been imposed for the injuries caused by such acts, although committed in play and without the intent to inflict substantial injury. Of course, if the injury was an accident, or the acts of the child were only the natural activity of friendly play, there is no liability.''

So Prosser in his work on Torts, pages 1085-1086 says:

''The law of torts . . . has been more concerned with the compensation of the injured party than with the moral guilt of the wrongdoer, and has refused to hold that an infant is immune from assault and battery, trespass, conversion, defamation, seduction, and negligence. . . .

''This general rule denying immunity must, however, be qualified in a number of respects. In many torts, the state of mind of the actor is an important element. For example, an intent to bring about physical contact is necessary to battery, and in most jurisdictions 'scienter,' or intent to deceive, is said to be essential to deceit. It has been recognized that a child may be of such tender years that he is not an intelligent actor and is incapable of the specific intent required, so that the tort has not been committed, and the event is to be classified as an unavoidable accident. Likewise, in the case of negligence, children have been recognized as a special group to whom a more or less subjective standard of conduct is to be applied, which will vary according to their age, intelligence and experience, so that in many cases immunity is conferred in effect by finding merely that there has been no negligence.''

The same qualification last quoted from Prosser is stated in 27 American Jurisprudence, section 91, pages 813-814: ''The general rule that infants are responsible, like other persons, for their torts is subject to the qualification that the torts for which they are so liable must not involve an element necessarily wanting in their case. Their liability may be affected by their mentality. Thus, in the case of slander, malice is a necessary ingredient in the wrong. . . . It is obvious, therefore, that in the case of slander an infant cannot be held liable for his tort until he arrives at that age or acquires that capacity which renders him morally responsible for his actions. . . . There is authority to the effect that a minor charged with actionable negligence is not to be held to the standard of care of an adult without regard to his nonage and want of experience. Reasonable care, having regard to the age and stage of development of the in-

dividual, is required of minors as well as adults, and no different measure is to be applied to their primary than to their contributory faults. . . . A child is required to exercise only that degree of care which the great mass of children of the same age ordinarily exercise . . . taking into account the experience, capacity, and understanding of the child.''

See, also, 1 Cooley on Torts, 4th edition, section 64, pages 186-187, section 66, page 194 et seq.; Harper on Torts, section 282, pages 616-617.

■ From these authorities and the cases which they cite it may be concluded generally that an infant is liable for his torts even though he lacks the mental development and capacity to recognize the wrongfulness of his conduct so long as he has the mental capacity to have the state of mind necessary to the commission of the particular tort with which he is charged. ■ Thus as between a battery and negligent injury an infant may have the capacity to intend the violent contact which is essential to the commission of battery when the same infant would be incapable of realizing that his heedless conduct might foreseeably lead to injury to another which is the essential capacity of mind to create liability for negligence.

■ We may take it as settled in the case of infants as stated in the quotation from American Jurisprudence above set out that ''no different measure (of negligence) is to be applied to their primary than to their contributory faults.'' In a case involving the question of the liability of an infant for his negligent conduct the court in *Hoyt* v. *Rosenberg*, 80 Cal.App.2d 500, said at pages 506-507 [182 P.2d 234, 172 A.L.R. 883] : ''While the question as to whether a minor has been negligent in certain circumstances is ordinarily one of fact for the jury, an affirmative finding thereon . . . must conform to and be in accordance with the established rule that a minor is expected to use, not the quantum of care expected of an adult, but only that degree or amount of care which is ordinarily used by children of the same age under similar circumstances.'' This is the same test applied in determining a child's contributory negligence. (19 Cal.Jur., Negligence, § 41, pp. 604-605.)

■ So far as the count charging the infant defendant with negligence is concerned the question presented to the court is whether as a matter of common knowledge we can say that a child 4 years of age lacks the mental capacity

to realize that his conduct which is not intended to bring harm to another may nevertheless be reasonably expected to bring about that result. In the absence of compelling judicial authority to the contrary in the courts of this state we are satisfied that a 4-year-old child does not possess this mental capacity. In the case of *Crane* v. *Smith,* 23 Cal.2d 288, 301 [144 P.2d 356], the court said of a 3-year-old child: "And since Janice was too young to be guilty of contributory negligence, the appellant's liability to her is established." In support of this holding the court cited *Gonzales* v. *Davis,* 197 Cal. 256 [240 P. 16], which involved a 5-year-old child.

Appellant cites *Baugh* v. *Beatty,* 91 Cal.App.2d 786, 793 [205 P.2d 671], where the court said of a 4-year-old boy: "Whether a minor of tender years has conducted himself with the care and prudence due from one of his years and experience is strictly a question of fact for the jury." The court cited only *Opelt* v. *Al. G. Barnes,* 41 Cal.App. 776 [183 P. 241], which involved a 10-year-old child. The child had been bitten by a chimpanzee at a circus and the court later stated the question to be "whether plaintiff knowingly and voluntarily invited the injury" and "knowingly and consciously placed himself in danger." Such conduct is more than negligence since it involves the intentional taking of a risk and the opinion on its face indicates that the court was making no clear distinction between mere negligent conduct and deliberate and premeditated conduct.

No purpose will be served by reviewing all the authorities. None has been found in this state which we feel compels us to hold that a 4-year-old has the mental capacity for negligent conduct. It is stated in a note collecting the cases from other jurisdictions in 107 American Law Reports 102 et seq.: "In a majority of the cases it seems that the courts have regarded a child between the ages of 4 and 5 years as incapable of personal negligence, the rule of conclusive incapacity applying to a child of such an age." (See further cases collected in the supplement to this note in 174 A.L.R. 1119.) We are satisfied from our own common knowledge of the mental development of 4-year-old children that it is proper to hold that they have not at that age developed the mental capacity for foreseeing the possibilities of their inadvertent conduct which would rationally support a finding that they were negligent. The mental development of children from that age forward is so rapid that cases such as *Smith* v.

*Harger,* 84 Cal.App.2d 361 [191 P.2d 25], dealing with a 5-year-old child are not helpful to us.

When it comes to the count charging battery a very different question is presented. We certainly cannot say that a 4-year-old child is incapable of intending the violent or the harmful striking of another. Whether a 4-year-old child had such intent presents a fact question; and in view of section 41 of the Civil Code which makes the recognition of the wrongful character of the tort immaterial so far as the liability for compensatory damages is concerned, we must hold that the count charging battery states a cause of action.

The third count is without question sufficient to state a cause of action against the defendant parents. It alleges that these defendants employed plaintiff for the first time to act as baby sitter for their son, that the son "habitually engaged in violently attacking and throwing himself forcibly and violently against other people, and violently shoving and knocking them, all of which said defendant parents knew," that said "parents negligently and carelessly failed to warn plaintiff of said child's said traits and disposition and negligently and carelessly failed to inform plaintiff that said child habitually indulged in such violent and furious attacks on others," and that shortly after plaintiff entered on her duties in the home the child attacked her to her resultant injury.

While it is the rule in California, as it is generally at the common law, that there is no vicarious liability on a parent for the torts of a child there is "another rule of the law relating to the torts of minors, which is somewhat in the nature of an exception, and that is that a parent may become liable for an injury caused by the child where the parent's negligence made it possible for the child to cause the injury complained of, and probable that it would do so." (*Buelke* v. *Levenstadt,* 190 Cal. 684, 689 [214 P. 42] ; *Rocca* v. *Steinmetz,* 61 Cal.App. 102 [214 P. 257].)

Section 316, Restatement of Torts states the rule:

"A parent is under a duty to exercise reasonable care so to control his minor child as to prevent it from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them, if the parent

"(a) knows or has reason to know that he has the ability to control his child, and

"(b) knows or should know of the necessity and opportunity for exercising such control."

In a note in 155 American Law Reports at page 87

cases are collected under the following statement: "The parent will incur liability for his minor child's intentional acts of violence or damage to persons or property if, knowing of the child's vicious or destructive tendencies or acts, he fails to exercise reasonable measures to restrain or discipline the child and thus encourages or acquiesces in such misconduct on the part of the child."

Among the cases there cited are *Condel* v. *Savo*, 350 Pa. 350 [39 A.2d 51, 155 A.L.R. 81], which held liable the parents of a boy who assaulted a younger child and threw him down an embankment where the boy was in the habit of attacking younger children and the parents with knowledge of such conduct had failed to exercise reasonable care to control him; *Norton* v. *Payne*, 154 Wash. 241 [281 P. 991], where under similar circumstances of previous conduct and lack of restraint the child struck a younger child in the eye with a stick; *Ryley* v. *Lafferty*, 45 F.2d 641, also an assault on a younger child with similar knowledge of previous conduct and lack of restraint; *Hoverson* v. *Noker*, 60 Wis. 511 [19 N.W. 382, 50 Am.St.Rep. 381], where two young boys were in the habit of shooting guns and shouting at passersby and the parents with knowledge took no care to prevent their conduct; *Johnson* v. *Glidden*, 11 S.D. 237 [76 N.W. 933, 74 Am.St.Rep. 795], where with knowledge that he was using it negligently the parents permitted their son to continue in possession of an air gun.

Most nearly in point is *Zuckerberg* v. *Munzer*, 95 N.Y.S.2d 856; affd. 277 App.Div. 1061 [100 N.Y.S.2d 910]. In this case, as in ours, a person employed in the household was attacked by a young son. Plaintiff charged that the boy's tendency to assault people was well known to the parent and that the parent had not warned the plaintiff of this propensity. The court citing Harper's Law of Torts, section 283 said: "There are situations in which the parent may be held liable . . . 4. Where the parent's negligence consists entirely of his failure to restrain the child from vicious conduct imperilling others, when the parent has knowledge of the child's propensity toward such conduct."

See, also, Prosser on Torts 914; Shearman & Redfield on Negligence, rev. ed. Zipp, § 144, p. 344; 67 C.J.S., Parent and Child, § 68, pp. 798-800; *Agnesini* v. *Olsen*, 277 App.Div. 1006 [100 N.Y.S.2d 338]; *Sawyer* v. *Kelly*, 194 Okla. 516 [153 P.2d 97]; *Mazzocchi* v. *Seay*, 126 W.Va. 490 [29 S.E.2d 12]; *Gudziewski* v. *Stemplesky*, 263 Mass. 103 [160 N.E. 334];

*Kuchlik* v. *Feuer*, 239 App.Div. 338 [267 N.Y.S. 256]; *Vallency* v. *Rigillo*, 91 N.J.L. 307 [102 A. 348]; *Davis* v. *Gavalas*, 37 Ga.App. 244 [139 S.E. 577]; *Mendola* v. *Sambol*, 166 Pa.Super. 351 [71 A.2d 827].

Respondent relies on *Weber* v. *Pinyan*, 9 Cal.2d 226 [70 P.2d 183, 112 A.L.R. 407]; *Hagerty* v. *Powers*, 66 Cal. 368 [5 P. 622, 56 Am.Rep. 101]; *Figoni* v. *Guisti*, 43 Cal.App. 606 [185 P. 694]; and *Hudson* v. *Von Hamm*, 85 Cal.App. 323 [259 P. 374] as stating a different rule for California. *Hagerty* v. *Powers* was a case in which the complaint alleged that the defendant father negligently, etc., permitted his 11-year-old son to have a loaded revolver. The complaint did not allege any propensities in the child making it dangerous for him to have a gun or that any such was known to the father. The court said "that a father is not liable . . . for the torts of his child committed without his knowledge, consent or sanction." We entertain no doubt that today if the complaint stated facts showing traits in the child making it dangerous to let him have a loaded pistol and knowledge of those traits by the father it would be held to state a cause of action. The case would then on principle be no different from *Rocca* v. *Steinmetz, supra,* 61 Cal.App. 102, where liability was imposed on a father who negligently allowed his son to drive an automobile with knowledge that he was a careless and reckless driver.

*Figoni* v. *Guisti, supra,* 43 Cal.App. 606, involved a 17-year-old boy who shot another with a pistol left by the boy's father in a drawer. No proof was made that the boy was reckless or unfit in any way to have access to a loaded pistol. Such proof was attempted by showing that the gun on a previous occasion had been exhibited by the boy to another. The court said of this evidence: "There is nothing in this evidence to show that young Guisti showed any inclination to injure anyone." (43 Cal.App. 612.)

*Hudson* v. *Von Hamm, supra,* 85 Cal.App. 323 was an attempt to impose vicarious liability on the parent for a tort committed by the child in Hawaii, where by statute the parent even without fault is made liable for the torts of his child. The court held the enforcement of such liability contrary to the policy of the forum. There was no discussion of the question of the parent's liability for his own negligence. The court at page 326 quoted Shearman and Redfield on Negligence to the following effect: "He is liable however only for his own fault, and not for that of the child." The only

allegation of knowledge by the parent was that the child was "disposed to climb about the furniture," clearly not enough to show dangerous conduct.

In *Weber* v. *Pinyan, supra,* 9 Cal.2d 226 at page 235 the court said: "It is the settled rule in this state that a parent is not liable for the tort of his minor child without participation in the fault by the parent." This was only a cryptic way of saying that where the parent is without fault he is not liable for the tort of his minor child.

The judgment is reversed with directions to the trial court to overrule the demurrer to the first and third counts of the amended complaint.

Nourse, P. J., and Goodell, J., concurred.

Respondents' petition for a hearing by the Supreme Court was denied April 27, 1953.