M. ELIZABETH LUCINI, Appellant, *v.*
GUIDO F. LUCINI, Respondent.

No. 11059

April 10, 1981                                   626 P.2d 269

*Breen, Young, Whitehead, Terzich & Belding, Chartered,* Reno, for Appellant.

*Petersen & Petersen,* Reno, for Respondent.

## OPINION

*Per Curiam:*

In this appeal we must decide (1) whether the trial court abused its discretion in applying the Van Camp method in apportioning certain marital property, and (2) whether the trial court erred in failing to find that there had been a substantial commingling of the parties' assets. We find no error and affirm.

Respondent, Guido Lucini, deceased, commenced this divorce action against defendant-appellant, M. Elizabeth Lucini.[1] The divorce was granted, and subsequently, the court rendered a decision settling the property rights of the parties.

The property in question was Mr. Lucini's ownership in Lucini & Associates, a closely held subchapter "S" corporation. When the parties were married in 1966, Mr. Lucini was president and majority stockholder of Lucini & Associates; throughout the marriage he together with all other stockholders and employees were paid salaries for their services. All excess capital was dispersed to the stockholders annually.

Lucini & Associates had materially changed throughout the course of the 11 year marriage. Mr. Lucini decreased his ownership of stock in the corporation from 51 percent to 30.08 percent, and additional members had joined the corporation, so that in addition to respondent's original partner, Remo Fratini, there are now three other members, Mr. Mayer, Mr. Talbot, and Mr. Bowers. The trial court made no finding as to the value of Lucini & Associates or the increase in value of respondent's stock during this period.

*1. The Van Camp Apportionment Method.*

NRS 125.150(1)(b) requires that in making a disposition of community property the court shall divide the property in a "just and equitable" manner. To effectuate such a result in cases where a spouse devotes his or her time, labor, and skill to the production of income from separate property, we adopted the methods of apportionment from the California cases of Pereira v. Pereira, 103 P. 488 (Cal. 1909) and Van Camp v. Van Camp, 199 P. 885 (Cal.App. 1921). *See* Schulman v. Schulman, 92 Nev. 707, 558 P.2d 525 (1976); Wells v. Bank of Nevada, 90 Nev. 192, 522 P.2d 1014 (1973).

In Cord v. Neuhoff, 94 Nev. 21, 26, 573 P.2d 1170, 1173 (1978), we held that the "preferred method" is that suggested in *Pereira* "unless the owner of the separate estate can establish that a different allocation is more likely to accomplish justice." *See* Johnson v. Johnson, 89 Nev. 244, 247, 510 P.2d 625, 627

---

[1]Mr. Lucini died during the pendency of this appeal and a suggestion of death has since been filed with the court.

(1973). In Wells v. Bank of Nevada, 90 Nev. at 195, 522 P.2d at 1017, we held apportionment pursuant to the Van Camp method proper to achieve substantial justice, when "the community was fully compensated for the . . . community labor through [the husband's] annual salary and related benefits."

In this case the trial court's determination that respondent received full value in salary, profit distributions and fringe benefits is supported by the record. The trial court therefore did not abuse its discretion in utilizing the Van Camp method to apportion the Lucini assets.

*2. Commingling of Assets.*

Appellant's remaining contention is that commingling of the community and separate property assets was so extensive that Mr. Lucini failed to sustain the burden of proof demonstrating that his separate property was not thereby transmuted to community property. Ormachea v. Ormachea, 67 Nev. 273, 217 P.2d 355 (1950).

There is a rebuttable presumption that with certain exceptions, all property acquired after marriage by either spouse is community property. NRS 123.220. This presumption gains strength when any claimed separate property has been extensively intermingled with community property. Fox v. Fox, 81 Nev. 186, 401 P.2d 53 (1965).

In the case before us, the character of the property was established through the tracing of funds contained in two bank accounts that had been maintained throughout the marriage. One account was a separate account of respondent's, called the Wells-Ryland account, the other was a joint account for appellant and respondent. There was some commingling of assets between these accounts. However, accountants for both parties testified in detail on a year by year basis regarding transfers between the joint account and the separate account, expenditures for community and separate property, and deposits from unaccounted for sources.

The record reflects the thoroughness with which both parties' accountants reviewed the commingled funds and expenditures from both accounts, and even though some funds are unaccounted for, there exists substantial evidence to support the trial court's finding that community and separate income and expenditures were traceable. Kelly v. Kelly, 86 Nev. 201, 307, 468 P.2d 359, 363 (1970).

We affirm the judgment of the trial court.